UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLA BONILLA, | No. 1:26-cv-01425-DC-SCR (HC) |
| Petitioner, | |
| v. | ORDER GRANTING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER |
| KRISTI NOEM, et al., | |
| Respondents. | (Doc. No. 2) |

This matter is before the court on Petitioner's motion for a temporary restraining order (Doc. No. 2), which Petitioner concurrently filed with a petition for a writ of habeas corpus brought under 28 U.S.C. § 2241, challenging her ongoing immigration detention. (Doc. No. 1.) For the reasons explained below, the court will grant Petitioner's motion for a temporary restraining order.

**BACKGROUND**

**A.     Factual Background**

Petitioner Carla Bonilla is a native of Honduras. (Doc. No. 1 at ¶ 2.) On October 4, 2023, Petitioner and her minor child entered the United States without inspection and were charged with being inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). (*Id.* at ¶¶ 16, 17.) Petitioner was then temporarily detained, before being enrolled in the "alternatives-to-detention" program, and

1

released on October 6, 2023. (Doc. No. 7-1 at ¶ 9.) Petitioner then relocated to Maryland and applied for asylum. (Doc. No. 1 at ¶ 18.) On April 4, 2025, an immigration judge granted Petitioner withholding of removal to Honduras under the Convention Against Torture. (*Id.*; Doc. No. 7-1 at ¶ 13.) The immigration judge also bifurcated Petitioner's immigration case from her child's case. (Doc. No. 8-1 at 5.)

On January 14, 2026, Petitioner reported to Immigration and Customs Enforcement ("ICE") for the first time since the immigration judge granted withholding of removal. (Doc. No. 1 at ¶ 20.) At that appointment, ICE officers arrested Petitioner. (*Id.* at ¶ 21.) On January 20, 2026, Petitioner was transferred to the California City Correction Center. (*Id.*)

**B.      Procedural Background**

On February 18, 2026, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. No. 1.) Petitioner asserts claims for (1) detention without a statutory basis; (2) violation of 8 C.F.R. § 241.13(i)(2) and due process; (3) violation of 8 C.F.R. § 241.4(l) and due process; and (4) violation of the Fifth Amendment of the U.S. Constitution, Procedural Due Process, relating to third country removal procedures. (*Id.* at 4–8.)

Also on February 18, 2026, Petitioner filed the pending motion for a temporary restraining order seeking Petitioner's immediate release. Petitioner also seeks to enjoin Respondents from removing Petitioner to a third country without first providing her notice and an opportunity to assert a fear-based claim for relief from removal, to apply for asylum, or to apply for withholding of removal. (Doc. No. 2 at 14.) On February 20, 2026, Respondents Kristi Noem, Todd M. Lyons, Pam Bondi, Nancy Gonzalez, and Christopher Chestnut filed an opposition to Petitioner's motion. (Doc. No. 7.) On February 22, 2026, Petitioner filed a reply thereto. (Doc. No. 8.) On February 25, 2025, the court issued an order enjoining Respondents from removing Petitioner pending resolution of her pending motion for temporary restraining order. (Doc. No. 10.)

**LEGAL STANDARD**

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). The standard governing the issuing of a temporary

restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain either form of injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. 7, 20 (2008). The likelihood of success on the merits is the most important *Winter* factor. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

A party seeking injunctive relief must make a showing on all four prongs of the *Winter* factors to obtain injunctive relief. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011); *see Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) ("A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'") (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). A district court may consider "the parties' pleadings, declarations, affidavits, and exhibits submitted in support of and in opposition to the [motion for injunctive relief]." *Cal. Rifle & Pistol Ass'n, Inc. v. L.A. Cnty. Sheriff's Dep't*, 745 F. Supp. 3d 1037, 1048 (C.D. Cal. 2024); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Any evidentiary issues "properly go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F. Supp. 3d 1177, 1185 (C.D. Cal. 2015).

**ANALYSIS**

**A.     Likelihood of Success on the Merits**

1.      <u>Petitioner's Re-detention</u>

a.      *Statutory Framework*

Except in limited circumstances, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days ( . . . referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A).

The removal period begins on the latest of the following:

(i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Here, there is no suggestion by Respondents that Petitioner's removal order became final recently such that Petitioner's removal period is presently ongoing. Rather, the record suggests Petitioner's removal order was considered final as of May 4, 2025, when an IJ ordered Petitioner removed to Honduras, despite the subsequent withholding of removal. (Doc. No. 7-1 at 21.) Further, "[i]n general, [d]uring the removal period, the Attorney General shall detain the alien." 8 U.S.C. § 1231(a)(2)(A). Where "an alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision . . . ." 8 U.S.C. 1231(a)(3); *see also Alva v. Kaiser*, No. 25-cv-06676-RFL, 2025 WL 2419262, at *3 (N.D. Cal. Aug. 21, 2025) ("As mandated by Congress, the default status after the 90-day removal period is therefore release on conditions, not detention."). Here, Petitioner was detained on October 4, 2023, and released on October 6, 2023, on an "alternatives-to-detention" program. (Doc. No. 7-1 at ¶ 9.) As a result, Petitioner is no longer subject to detention under § 1231(a)(2). The court therefore considers whether Petitioner's re-detention in January 2026 is lawful under other statutory or regulatory provisions.

b.    *Lawfulness of Petitioner's Re-detention*

"Noncitizens subject to a final removal order may be released pursuant to 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13." *Khamba v. Albarran*, No. 1:25-cv-01227-JLT-SKO, 2025 WL 2959276, at *7 (E.D. Cal. Oct. 17, 2025) (citation omitted). These regulations also govern the revocation of a noncitizen's release from custody. *See id.* Respondents invoked both statutes in the Notice of Revocation of Release served on Petitioner on January 14, 2026. (Doc. No. 7-1 at 29–30.)

Under 8 C.F.R. § 241.4(l)(2), a noncitizen's release may be revoked "to enforce a removal order or to commence removal proceedings against" a noncitizen. 8 C.F.R. § 241.4(l)(2)(iii). Under 8 C.F.R. § 241.13(i)(2), a noncitizen's release may be revoked "if, on account of changed

4

circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Both regulations require that upon revocation, a noncitizen (1) "will be notified of the reasons for revocation of his or her release" and (2) will be given "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.13(i)(3), 241.4(l)(1).

On the record presently before the court, Petitioner has not shown that ICE failed to comply with the requirement to (1) inform Petitioner of the reasons for the revocation of her release upon revocation and (2) afford Petitioner an informal interview and opportunity to respond to the reasons for revocation stated in the notification promptly after her return to custody. *See id.* The Notice of Revocation of Release is dated January 14, 2026, which is the date Petitioner states that she was re-detained. (Doc. Nos. 7-1 at 29–30; 1 at ¶ 3.) The Notice of Revocation of Release indicates that Petitioner was re-detained due to changed circumstances, specifically, that Mexico was willing to accept Petitioner's removal. (Doc. No. 7-1 at 29.) The Notice of Revocation of Release also includes a proof of personal service on Petitioner on January 14, 2026, which is signed and dated by an ICE officer and by Petitioner. (*Id.* at 30.)

On January 14, 2026, Petitioner was also served with a Notice of Removal to Mexico, which she signed. (*Id.* at 31.) Petitioner was then served with a second Notice of Removal to Mexico on February 18, 2026, which she refused to sign. (*Id.* at 34.) It also appears an ICE agent conducted an informal interview, as required by the applicable regulations, with Petitioner on the day she was detained. (*Id.* at 33.)

However, based on the record before the court, Petitioner has demonstrated she is likely to succeed on the claim that ICE did not comply with § 241(i)(2), which mandates that ICE must determine that "on account of changed circumstances," the noncitizen is likely to be removed in the foreseeable future. 8 C.F.R. § 241.13(i)(2). Although Petitioner was served with a Notice of Removal both on January 14, 2026 and February 18, 2026 (Doc. No. 7-1 at 31, 34), there is no evidence in the record that ICE has secured or even sought to obtain travel documents to Mexico, or that Mexico has agreed to accept Petitioner. *C.f. Mendoza v. Lyons*, No. 1:25-cv-01650-DC-

5

SCR, 2025 WL 3514126, at *4 (E.D. Cal. Dec. 8, 2025) (finding that the evidence before the court did not support a finding of no changed circumstances where petitioner was served with a notice of removal and DHS had secured travel documents on his behalf); *see also Duong v. Charles*, No. 1:25-cv-01375-SKO, 2025 WL 3187313, at *3 (E.D. Cal. Nov. 14, 2025) (finding no evidence of changed circumstances where the government "did not even submit a request to Vietnam for travel documents" until a month after re-detaining petitioner); *Sphabmixay v. Noem*, No. 25-cv-2648-LL-VET, 2025 WL 3034071, at *2 (S.D. Cal. Oct. 30, 2025) (finding no evidence of changed circumstances where the government "did not even submit a request to Laos for travel documents" until a week after re-detaining petitioner).

Instead, Respondents represent that because Mexico is part of the "Electronic Nationality Verification (ENV) program," Enforcement and Removal Operations ("ERO") can effectuate Petitioner's removal to Mexico without a travel document. (Doc. No. 7-1 at 3 ¶ 19.) However, Respondents provide no further explanation as to why that is the case, and do not affirmatively state whether Mexico has agreed to accept Petitioner.[1] *See Ndandu v. Noem*, No. 3:25-cv-02939-RBM-MSB, 2026 WL 25848, at *5 (S.D. Cal. Jan. 5, 2026) ("Even when authorized, third country removal still requires the affirmative assent of the receiving country.") (citing 8 U.S.C. § 1231(b)(2)(E)(vii)). Respondents state in opposition that besides ICE's belief that Petitioner will soon be removed to Mexico, "[R]espondents are not aware of any changed circumstances upon which immigration authorities acted when they revoked [Petitioner]'s order of supervision in January." (Doc. No. 7 at 3.) Accordingly, Petitioner has shown that ICE likely violated its own rule under § 241.13(i)(2), given the lack of any evidence of a determination of changed circumstances to justify the revocation of Petitioner's release. *See N.D.N. v. Bondi*, No. 1:25-cv-01587-DAD-CKD, 2025 WL 3251102, at *4 (E.D. Cal. Nov. 21, 2025) (finding respondents did not meet their statutory burden of demonstrating petitioner was likely to be removed where the only evidence in support of that assertion was a conclusory unsworn statement that respondents

---

[1] ICE has also represented in at least one other recent case that Mexico is "generally declining to accept third country removals." *Sanchez-Hernandez v. Figueroa*, No. 25-cv-02351-PHX-DWL (MTM), 2026 WL 21259, at *2 (D. Ariz. Jan. 5, 2026).

were seeking a travel document); *J.L.R.P.*, 2025 WL 3190589, at *5 (finding no changed circumstances where respondents did not identify any changed factual circumstance concerning petitioner or any evidence to indicate that Petitioner would likely be removed in the foreseeable future).

### 2.    Third Country Removal

#### a.    *Statutory Framework*

Where, as here, an immigration judge issues a final removal order withholding removal to the country identified in removal proceedings, DHS is authorized to remove the noncitizen to an alternative country. 8 C.F.R. 1240.12(d). Removal to countries identified outside of initial removal proceedings are referred to as "third country removals." Notwithstanding DHS's authority to effectuate third country removals, noncitizens may not be removed to countries where their "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion," or where "it is more likely than not that [the noncitizen] would be tortured if removed to the proposed country of removal." 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16. While DHS has the authority to remove a noncitizen to a country not identified in the final removal order, there is no statute or regulation providing a specific procedure to effectuate such a third country removal. *See Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019).[2]

#### b.    *Due Process*

Petitioner contends that Respondents' attempt to remove Petitioner to Mexico, without providing her a "notice and opportunity to seek protection before she may be removed" constitutes a violation of her right to Due Process guaranteed by the Fifth Amendment. (Doc. No. 2 at 11.)

Here, Respondents indicate that Petitioner "did not express [a] fear" of removal to

---

[2] The court engaged in a more thorough analysis of the statutes and policies governing third country removals in its order granting a temporary restraining order in *A.A.M. v. Andrews*, No. 1:25-cv-01514-DC-DMC, 2025 WL 3485219, at *1–2 (E.D. Cal. Dec. 4, 2025). The court hereby incorporates that analysis by reference in this order.

Mexico. (Doc. No. 7-1 at 3, ¶ 16.) However, Petitioner avers that there is no evidence before the court to suggest that Petitioner was "questioned as to whether she has a fear of removal to Mexico or that she was provided notice that she may seek protection before an immigration judge." (Doc. No. 8 at 3.) Petitioner asserts that prior to removal to Mexico, Petitioner must be provided notice and opportunity to seek protection from removal. (Doc. No. 1 at ¶ 45.)

Further, based on ICE/DHS policy, in the event ICE determines Petitioner lacks a credible fear, she would not be able to challenge that determination before a neutral arbiter. *See A.A.M v. Andrews*, No. 1:25-cv-01514-DC-DMC, 2025 WL 3485219, at *2 (E.D. Cal. Dec. 4, 2025). Petitioner has therefore shown she is likely to succeed on the merits of her due process claim, given that numerous courts in the Ninth Circuit, including this court, have found that noncitizens have a Due Process right to have their fear-based claims for relief from removal to third countries heard by a neutral adjudicator before the removal can be effectuated. *See A.A.M.¸* 2025 WL 3485219 at *11 ("Due process requires that Petitioner receive a full and fair hearing of his fear-based claim in front of a neutral adjudicator."); *Y.T.D. v. Andrews*, No. 1:25-cv-01100-JLT-SKO, 2025 WL 2675760, at *11 (E.D. Cal. Sep. 18, 2025) ("On balance, on this record, the Court finds that there is a sufficiently imminent risk that Petitioner will be subjected to improper process in relation to any third country removal to warrant imposition of an injunction requiring additional process."); *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1010 (2019) ("ICE's attempt to remove Petitioner to Somalia without notice, much less an opportunity to be heard, violated petitioner's due process rights.").

Accordingly, the court finds that Petitioner is likely to succeed on the merits of her claim that Respondents' failure to provide Petitioner notice and opportunity to present her fear-based claim for relief from removal to Mexico violates her constitutional right to Due Process.

**B.      Irreparable Harm**

It is well established that the deprivation of a constitutional right "unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Where, as here, the "alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is

necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (*quoting* Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)); *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) ("It is well-established that the first factor is especially important when a plaintiff alleges a constitutional violation and injury. If a plaintiff in such a case shows he is likely to prevail on the merits, that showing usually demonstrates he is suffering irreparable harm no matter how brief the violation.")

Therefore, the second *Winter* factor weighs in favor of granting Petitioner's request for injunctive relief.

**C.     Balance of the Equities and Public Interest**

The court now turns to the last two *Winter* factors. The balance of the equities and public interest analyses merge when the government is the opposing party, as is the case here. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

"In cases implicating removal, 'there is a public interest in preventing [noncitizens] from being wrongfully removed, particularly to countries where they are likely to face substantial harm.'" *Nguyen v. Scott*, No. 2:25-cv-01398, 2025 WL 2419288, at *28 (W.D. Wash. Aug. 21, 2025) (quoting *Nken*, 556 U.S. at 436). Despite any interest the government may have in promptly executing removal orders, "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952)).

Finally, that Petitioner has shown a likelihood of success on the merits tips the public interest further in her favor. *Riley's Am. Heritage Farms v. Elasser*, 32 F.4th 707, 731 (9th Cir. 2022) (quoting *Melendres*, 695 F.3d at 1002).

Therefore, the third and fourth *Winter* factors also weigh in favor of granting Petitioner's request for injunctive relief. Because all four *Winter* factors weigh in Petitioner's favor, the court finds that injunctive relief guaranteeing Petitioner's Due Process right to have her fear-based claim for relief from removal to Mexico, or any third country, heard by a neutral adjudicator is warranted.

**E.      Bond**

Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary injunctive relief 'only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.'" *Johnson*, 572 F.3d at 1086 (quoting Fed. R. Civ. P. 65(c)). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" *Id*. (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, '[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" *Id.* (quoting *Jorgensen*, 320 F.3d at 919).

The court finds that no security is required here. Courts regularly waive security in cases like this one. *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Lepe v. Andrews*, No. 25-cv-01163-KES-SKO, 2025 WL 2716910, at *10 (E.D. Cal. Sep. 23, 2025); *Pinchi v. Noem*, No. 25-cv-05632-RMI-RFL, 2025 WL 1853763, at *4 (N.D. Cal. Jul. 4, 2025).

<strong>CONCLUSION</strong>

For the reasons explained above,

1.      Petitioner Carla Bonilla's motion for temporary restraining order (Doc. No. 2) is GRANTED as follows:

     a.      Respondents are ORDERED to immediately release Petitioner from Respondents' custody;

     b.      Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, strict compliance with the requirements of 8 C.F.R. § 241.13(i);

     c.      In the event that Respondents re-detain Petitioner, Respondents and their officers, agents, servants, employees, and persons acting on their behalf in concert or in participation with them are ENJOINED AND RESTRAINED from removing Petitioner to a third country without first allowing her a

10

meaningful opportunity to be heard on a fear-based claim before an immigration judge in compliance with due process; and

2.	This matter is referred to the assigned magistrate judge for further proceedings.

IT IS SO ORDERED.

Dated:	**March 26, 2026**

_____
Dena Coggins
United States District Judge

11